# Esbeco Distilling Co. v. Shannon, Auditor of Public Accounts.

May 16, 1939.

Morris & Garlove for appellant.

J. J. Leary for appellee.

Ernest N. Fulton amicus curiae.

OPINION OF THE COURT BY JUDGE REES—Reversing.

This is the second appeal of this case. The opinion on the first appeal is reported in 275 Ky. 51, 120 S. W. (2d) 745, 746.

The Esbeco Distilling Company paid under protest the annual permit fee of $1,000 for each of the years 1936 and 1937, as provided in Section 2554b-57, Kentucky Statutes, which reads:

"For the privilege of distilling spirituous liquors, manufacturing vinous or intoxicating malt liquors there is assessed and there shall be paid an annual permit fee of and by every person engaged therein the sum of one thousand dollars for each and every manufacturing or distilling plant."

It brought the action against the State Auditor to recover the $2,000 so paid on the theory that the tax was on the plant and that the lessee of such plant was not required to pay the tax where it had been paid by the owner. The circuit court sustained a demurrer to the petition, and, the defendant having declined to plead further, adjudged that the plaintiff recover the sum sued for. On the first appeal this judgment was reversed. It was held that the permit fee was for the privilege of operating the plant for the distillation of liquors, and was not a tax on the plant. In the course of the opinion it was said:

"When this statute is read, as it should be, in connection with the comprehensive act of which it is a part, there is little if any room for doubt concerning its meaning. It imposes an anual fee or tax upon every person exercising the privilege of manufacturing or distilling any of the liquors specified in the section, the amount of the tax being $1,000 for each plant operated by the same person in the manufacture of such liquors. Appellee and its lessor, so far as the record discloses, were entirely separate and distinct entities and appellee was operating the plant for itself and not for the owner. It does not appear in the record whether the owner operated its plant for the distillation of liquors at any time during the year or years in controversy. It is stated in one of the briefs that it did; however, we do not consider that material so far as appellee's right of recovery is concerned. If the owner had elected to let its plant remain idle or had

not used it for its own purposes in distilling liquors during the years covered by appellee's permit no license tax could have been required of it."

Further along in the opinion it was said:

"Amici curiæ briefs have been filed by eminent counsel on behalf of their clients who own or operate distilleries and who are resisting the payment of the license or permit fee under Section 2554b-57 of the Statutes. In their cases it is claimed that leases are made by the owners to another as a mere formality to comply with regulations of the Internal Revenue Department of the United States; or a plant is being operated by a subsidiary whose stock is owned by the parent corporation and the operations are in fact for the lessor or parent corporation. No such situation is presented by the record before us. Appellee is a separate and distinct corporation from the owner and the latter was in nowise interested in the operation of the former."

Upon the return of the case the plaintiff filed an amended and substituted petition, together with photostatic copies of the agreements entered into on March 12, 1936, and February 15, 1937, between the plaintiff and the Dant & Head Distilling Company. The facts alleged in the amended and substituted petition, the truth of which is admitted on demurrer, are, in substance:

The plaintiff purchased from the Dant & Head Distilling Company 2,400 barrels of whisky at .65 cents a gallon under the 1936 contract, and 1,200 to 1,500 gallons at .62 cents a gallon under the 1937 contract, all of the whisky to be manufactured by the seller. It never had possession of the distillery plant, and never actually engaged in the business of distilling spirituous liquors. The whisky purchased by it was manufactured by Dant & Head Distilling Company at the latter's plant, and was delivered to plaintiff at a fixed price per gallon. The agreement between Dant & Head Distilling Company and plaintiff refers to the parties as seller and buyer, respectively. Additional agreements were entered into between plaintiff and Dant & Head Distilling Company on February 24, 1936, and March 1, 1937, in which Dant & Head Distilling Company consented that its distillery might be used by plaintiff at intermittent intervals during the years 1936 and 1937 to be agreed

upon by the parties. It was also alleged that the claimed leasing of the distillery to plaintiff was a mere formality to comply with technical regulations of the Internal Revenue Department of the United States in order that the whisky in question might be branded with plaintiff's name; that while it was and is authorized by the terms of its charter to manufacture and distill spirituous liquors, yet it never did, in fact, manufacture such liquors, and was not so engaged at any time mentioned in the petition within the Commonwealth of Kentucky; that it never at any time operated the plant of Dant & Head Distilling Company or any other plant in Kentucky for the distillation of liquors, and has never exercised control or supervision over, or directly or indirectly participated in the manufacture and distillation of liquors in Kentucky and has never been required by the United States to furnish a warehouse bond for storing the whisky purchased by it, under the agreements with the Dant & Head Distilling Company; that it does not have any such warehouse; and that all the whisky described in the agreements was stored in the warehouse of the Dant & Head Distilling Company, which furnished, at all times, the warehouse bond therefor. The circuit court sustained a demurrer to the amended and substituted petition, and, from the judgment dismissing the action, the plaintiff has appealed.

It is appellee's theory that even if it be conceded that appellant did not actually engage in manufacturing liquors or in operating the Dant & Head Distilling Company plant and did not exercise any control or supervision over the making of the whisky or the employees used in the manufacture thereof, yet, having accepted the benefits of a special privilege conferred by the state, it is estopped to maintain an action to recover the fee paid for the permits which conferred these benefits. Stated in the form of a syllogism, appellee's argument is: (1) Any party who has derived benefits by exercising a privilege bestowed upon him by law is estopped to retain the benefits received, and, at the same time, question the authority under which he acts; (2) appellant accepted the benefits of a special privilege conferred by the State permitting it to purchase the whisky in question; therefore, (3) it is estopped to maintain an action to recover the fees paid for the permits which conferred these benefits.

Appellee's major premise is correct, but his minor

premise is false, and, consequently, his conclusion does not necessarily follow. Apparently it is appellee's contention that no one is permitted to purchase whisky in bulk except a distiller who has obtained the permit prescribed by Section 2554b-57, Kentucky Statutes. Section 4281c-8 of the Kentucky Statutes provides that "no manufacturer of alcoholic beverages shall sell or distribute by gift or sale any such beverages except to another manufacturer or to a wholesaler."

On December 1, 1934, the State Tax Commission, then charged with the responsibility of administering the liquor laws, adopted rules and regulations, including the following: "No wholesaler shall purchase in Kentucky or import into the state of Kentucky any spirituous or vinous or neutral spirits in bulk."

It is argued that under the foregoing statute and regulation the appellant could not have purchased the whisky from the Dant & Head Distilling Company as a wholesaler, but only as a distiller after it has procured the permit prescribed by Section 2554b-57. We do not so construe these sections of the Statutes. Section 4281c-8 does not limit the sale of whisky to a manufacturer who is actually engaged in the manufacture of whisky in Kentucky. When appellant purchased the whisky from Dant & Head Distilling Company, it was not obtaining a benefit by reason of having paid the permit fees prescribed by Section 2554b-57. The latter section was clearly intended to apply only to one who actually operates a plant for the distillation of liquors. As said on the former appeal of this case, "it imposes an annual fee or tax upon every person exercising the privilege of manufacturing or distilling any of the liquors specified in the section, the amount of the tax being $1,000 for each plant operated by the same person in the manufacture of such liquor."

Appellant never exercised the privilege of manufacturing liquor, and there is no allegation in the amended and substituted petition from which it can be inferred that the payment of the fee was required or made in order to permit appellant to purchase the whisky in question. The statute imposing the tax does not apply to a distiller in all phases of his business, but applies only to a distiller who is exercising the privilege of distilling spirituous liquors. It does not require a distiller to pay the permit fee to enable him to purchase whisky

manufactured by another distiller. The reference in the agreements between appellant and the Dant & Head Distilling Company to a lease of the distillery premises of the latter was merely a fiction to comply with certain regulations of the Internal Revenue Department of the United States to enable the buyer to label the whisky in its name and did not make appellant an operator of a distillery within the meaning of the statute in question. Appellant, under the contract set forth in the amended and substituted petition, was not given the privilege of manufacturing distilled liquors at the plant of Dant & Head Distilling Company, but, on the other hand, absolute control of the plant and the manufacturing process was retained by the owner. The contract was one merely for the sale and purchase of the whisky. Manifestly, the purpose of the statute imposing the $1,000 annual tax was to require a distiller to obtain a permit before exercising the privilege of manufacturing liquor. There is nothing in the statute tending to indicate a purpose by the Legislature to require a distiller to obtain a permit for the privilege of purchasing liquor manufactured by another distiller who has paid the permit fee prescribed by the statute. We think the Act is unambiguous and not susceptible to the interpretation contended for by appellee, but if it were ambiguous in this respect, there would come into play the well-recognized rule that statutes imposing license or privilege taxes are strictly construed against the state or taxing power and may not be extended beyond their clear import. Doubts as to the construction of such statutes must be resolved in favor of the taxpayers. Greene v. W. L. Weller & Sons, 176 Ky. 129, 195 S. W. 422; Armstrong v. Denver Saunders System Company, 84 Colo. 138, 268 P. 976; State v. Norman Mayer & Company, 170 La. 337, 127 So. 743; Gully v. Gulfport Loan & Brokerage Company, 168 Miss. 449, 151 So. 721; Caldwell v. State, 115 Ohio St. 458, 154 N. E. 792; Pee Dee Chair Company v. City of Camden, 165 S. C. 86, 162 S. E. 771.

The judgment is reversed, with directions to overrule the demurrer to the amended and substituted petition.

The Whole Court sitting.